## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WESTCODE, INC.                          :
                                        :
              Plaintiff,                :
                                        :
       v.                               :      Case No. 15-cv-02971-LDD
                                        :
MITSUBISHI ELECTRIC CORP.               :
                                        :
              Defendant.                :

## ORDER

**AND NOW,** this _____ day of _____, 2015, upon consideration of Defendant Mitsubishi Electric Corp's Motion to Dismiss Complaint, and the response by Plaintiff Westcode, Inc., it is hereby **ORDERED** and **DECREED** that, the Motion is **DENIED**.

**BY THE COURT:**

_____
**Davis, J.**

**PHILLIPS, CAMPBELL & PHILLIPS, LLP**
By: Patrick C. Campbell, Jr., Esquire          Attorneys for Plaintiff
I.D. No. 53350
314 N. Middletown Road
Lima, PA  19037
610/548-7100
610/565-7427 (fax)

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA


WESTCODE, INC.                    :
                                  :
              Plaintiff,          :
                                  :
       v.                         :          Case No. 15-cv-02971-LDD
                                  :
MITSUBISHI ELECTRIC CORP.         :
                                  :
              Defendant.          :


## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS REPSONSE TO DEFENDANT'S MOTION TO DISMISS

## I.  **PRELIMINARY STATEMENT**

The first filed rule does not apply here because this case was actually first filed and assuming, *arguendo*, that it was not, the New York case was filed in bad faith, without warning, with knowledge of the pendency of this case, to avoid unfavorable law. Transfer is not appropriate as the balance of factors do not support transfer. Lastly, declaratory relief is ripe and appropriate because it will free Westcode from stale, lingering claims, serve a useful purpose in clarifying and settling the legal relations between the parties and will terminate and afford relief from the uncertainty, insecurity, and controversy which are threatening to put Westcode out of business.

## II.  **FACTS RELATED TO THE MOTION**

### A.  The Parties' Business Relationship.

Westcode, Inc. ("Westcode") is a Pennsylvania corporation. Its headquarters are at 3 Dickinson Dr., Suite 100, Chadds Ford, Chester County, PA 19317. Westcode's executive officers are domiciled at, and its policies and decisions are made at its headquarters in Pennsylvania. Declaration of Edward J. Widdowson, ¶ 2, a true and correct copy of which is attached hereto as Exhibit "1" ("Dec. EJW ¶ __"). Mitsubishi Electric Corp. ("Mitsubishi"), upon information and belief, is a Japanese corporation with a place of business at 2-7-3 Marunouchi, Chiyoda-KU, Tokyo, 100-8310, Japan, SN15 1HY. Mitsubishi has no permanent employees, offices or facilities in New York. Dec. EJW ¶ 3. Westcode manufactures and/or assembles components for rail cars such as heating, ventilation and air conditioning units. Mitsubishi is a designer and manufacturer of, *inter alia*, systems for rail cars. Dec. EJW ¶ 4.

In or about 1997, Mitsubishi approached Westcode to partner up on rail car projects in order to give it a foot in the US market. First, on or about January 29, 1997, Westcode and

Mitsubishi entered into a certain License and Technical Assistance Agreement ("LTTA"). Dec. EJW ¶ 5. The LTTA essentially gave Westcode access to Mitsubishi's designs. In exchange, Westcode was required to pay a onetime upfront fee of $900,000.00 plus a royalty of 3% of the net sales price on finished product Westcode sold to customers. LTTA ¶ 6(1).

In furtherance of their relationship, on or about November 10, 1997, Westcode and Mitsubishi entered into a Joint Venture Agreement ("JVA"). Dec. EJW ¶ 6. Under the JVA, since Westcode had all of the relationships with the transit authorities, Westcode would solicit and contract with the customer as the supplier. Mitsubishi and Westcode would each supply certain parts and components and Westcode would assemble them into HVAC units that would then be delivered to customers. The JVA was effective for the term of the project known as the New York City Transit Authority R142A Project. The JVA, Recital (a) & ¶ 21. Westcode and Mitsubishi would split the customer revenues generated by the sale of units in that project pursuant to a pre-arranged amount—in the case of R142A Westcode was entitled to approximately 47% of the revenue and Mitsubishi was entitled to 53%. The R142A project was completed no later than 2004. Dec. EJW ¶ 6. Notwithstanding the termination of the JVA by its express terms, Westcode and Mitsubishi continued the economic terms of the JVA—namely the revenue split and payment terms—that they had agreed to for the following additional projects: R143, R160 and PATH. Dec. EJW ¶ 7.

Due to, *inter alia*, Mitsubishi's misrepresentations regarding the relative value of the parts and components it was supplying, Westcode was not making enough profit to fund the projects which was bad news for both parties. In or about 2008, Westcode had fallen behind on Mitsubishi's payments for the R142A, R143 and R160 projects. The parties entered into a

Memorandum of Understanding ("MOU") on November 13, 2008 in order to restructure the payment terms for the amount of $14,869,967.06. Dec. EJW ¶ 8.

The LTTA and the JVA were all negotiated at Westcode's offices in West Chester, Pa. The MOU was negotiated in Japan. Neither the LTTA, the JVA nor the MOU were executed in New York. They were either executed in Pennsylvania or Japan. All payments under the LTTA, JVA, and the MOU were made by wire, by Westcode, from instructions given by Westcode from its then office in West Chester PA to its bank, Fulton Bank, NA, also in West Chester Pa. Funds were wired to Mitsubishi's bank—the Bank of Tokyo, in Tokyo, Japan. All decisions regarding payments to Mitsubishi were made by decision makers in Pennsylvania. Dec. EJW ¶ 9.

The parties' relationships in regards to the foregoing Projects (R142A, R143, R160 and PATH), have generated a number of disputes, disagreements, claims and counterclaims between them.

### B.  The Parties' Efforts to Settle the Claims and Counterclaims Arising Out of their Relationship

The parties have been trying to resolve their differences since at least 2010. Indeed, in connection with a proposed resolution, Mitsubishi conducted full blown due diligence at Westcode in the fall of 2010. Dec. EJW ¶ 11.

Most recently, the parties met in person on April 16, 2014 ("the April 16th Meeting"). At that meeting, the parties made significant headway on the terms of another resolution. After that meeting, the parties were so close to settlement that Mitsubishi requested a meeting with Westcode's lender Fulton Bank, NA to discuss its role in a settlement. That meeting occurred on August 26, 2014 in West Chester, PA.  Dec. EJW ¶ 12.

After the meeting with Fulton Bank, the parties plan was to exchange documents, and conduct another round of due diligence in March 2015. There was a delay in Westcode's

document production due to delay between the parties in reaching agreement on confidentiality stipulations. The due diligence was canceled and while Westcode was literally waiting for it to be rescheduled Mitsubishi secretly filed suit in the United States District Court for the Northern District of New York captioned: *Mitsubishi Electric Corp. v Westcode, Inc.* No. . 3:15-cv-00505-MAD-DEP ("the New York Action"). Dec. EJW ¶ 13.

### C. The Parties' Litigation History

Throughout the above mentioned settlement discussions, Mitsubishi has maintained that Westcode is indebted to it in an amount in excess of $30,750,955.00. Complaint, ¶ 29. Westcode has always vehemently disputed that it owed Mitsubishi a nickel. Nevertheless, the mere presence of Mitsubishi's claims has had a severely deleterious effect on Westcode's finances. Dec. EJW ¶ 14.

Like any business its size, Westcode depends on a line of credit to cover its cash flow needs so it can pay its vendors in a timely fashion while waiting for its customers' payments. The failure to stay current with a vendor could cause the vendor to discontinue providing needed parts which could, in turn, literally shut down a job.  Dec. EJW ¶ 15.

The presence of the unresolved Mitsubishi claims has caused Westcode's lender, Fulton Bank, to shut off Westcode's line of credit. This squeezes Westcode from both sides. Because it has no access to its line of credit, Westcode is in the position of having to not only pay down the line, but also pay its vendors out of cash. The results have been disastrous on Westcode and its employees. Dec. EJW ¶ 16.

Without access to the line of credit, Westcode has been limited in the jobs it could take. As a result of these claims hanging over its head, Westcode has gone from a company with annual revenues of $30 million to a company with annual revenues of $10 million. Westcode had to shut down its assembly plant in West Chester, PA and lay off over 100 employees. Westcode

has explored refinancing with scores of other banks and lenders, but the inquiries have always ended with the potential replacement lenders not being interested as long as Mitsubishi's $30,000,000.00 in claims remained unresolved.

Westcode could no longer endure Mitsubishi's delays. Westcode resolved, prior to the April 16th Meeting to bring the issues to a head one way or another. Westcode decided that it would commence a lawsuit and if significant progress towards settlement was not made at that meeting, it would serve the lawsuit Mitsubishi at the meeting. On April 14, 2014, Westcode filed a lawsuit by filing a praecipie for writ of summons in the Chester County (Pennsylvania) Court of Common Pleas styled *Westcode, Inc. v. Mitsubishi Electric Corp.* No. 2014-03283 ("the Chester County Action"). Dec. EJW ¶¶ 17-18.

Progress, however, was made at that meeting. Westcode's counsel, Patrick Campbell, Esq., then contacted Mitsubishi's counsel, Perry Pappous, Esq., by cell phone that same day to both discuss the meeting and to advise Pappous of the lawsuit. Pappous advised that if the writ was formally served at that time it would have a negative impact on the progress of settlement with Mitsubishi's senior management in Japan. Both Campbell and Pappous agreed to do nothing at that time and to circle back on the lawsuit in another 60-90 days. Declaration of Patrick C. Campbell, Esq., ¶¶ 5-6, a true and correct copy of which is attached hereto as Exhibit "2" ("Dec. PCC ¶ __").

After more delays from Mitsubishi, on or about July 10, 2014, Campbell discussed service of the writ on Mitsubishi with Pappous. Pappous's response was to, again, ask that the writ not be served. Westcode decided to trust Mitsubishi that the parties were on a path to resolve their differences amicably and took no further action to serve the writ. Dec. PCC ¶ 7.

By letter dated September 2, 2014 from the Chambers of the Honorable Robert J. Shenkin, the parties were advised that the Chester County Action should be trial ready in 7 months.  John Cipriano, Esq., Pappous's co-counsel, suggested that Westcode write a letter to Judge Shenkin asking to extend the trial date so the parties could close the pleadings and conduct discovery. Dec. PCC ¶ 8. Pappous agreed with Cipriano. Accordingly, by letter dated September 22, 2014, Campbell wrote to Judge Shenkin, copying Pappous, advising him that "[n]o complaint has been filed as the parties have been endeavoring to resolve their differences and have been making progress in that regard". Dec. PCC ¶ 8.

As mentioned above, Mitsubishi scheduled another due diligence session at Westcode to begin in March 2015. Once confidentiality stipulations were resolved, on March 24, 2015, Westcode sent copies of the documents Mitsubishi requested. Westcode, at this point, fully expected that due diligence would be rescheduled based on Pappous' representation that he thought it would. Dec. PCC ¶ 10.

On March 13, 2015, the Chester County Court of Common Pleas sent the parties a notice that the Chester County Action was placed on the March 30, 2015 trial list of the Honorable Jeffrey R. Sommer. Campbell conferred with Pappous and they both agreed that Campbell would write to Judge Sommer, advise him of their settlement progress, and jointly ask for an administrative conference to remove the case from the trial list and request a scheduling order. Campbell did so by letter dated March 26, 2015. Pappous advised Campbell that he would attend the administrative conference on behalf of Mitsubishi either in person or by phone. Dec. PCC ¶¶ 10-12.

Judge Sommer granted the parties' joint request and scheduled an administrative conference for April 30, 2015. Dec. PCC ¶ 13. By letter dated April 21, 2015 Westcode

submitted an Administrative Conference Memorandum to Judge Sommer. That Memorandum identified the statute of limitations as a legal issue in the case. After that letter, Mitsubishi was not heard from again until the filing of the New York Action.

Campbell attended the conference as scheduled. Despite the fact that Pappous asked Campbell to represent that the request for the conference was joint, neither he nor any representative of Mitsubishi attended or even notified Chambers that they would not attend. Before the conference began, the Judge's secretary even called Pappous at both his work number and cell number but Pappous did not answer either call. Dec. PCC ¶ 14.

Mitsubishi's complaint seeks damages for payments not made under the MOU. Westcode's complaint seeks a declaration that all of Mitsubishi's claims are barred by the applicable statute of limitations so it can move on.

## III.    ARGUMENT

### A. THE FIRST FILED RULE DOES NOT WARRANT DISMISSAL OF THIS CASE.
#### 1.    This Case is First Filed.

Even though Westcode commenced litigation against Mitsubishi over one year before the New York Action was filed, Mitsubishi contends that it cannot be considered filed because it was filed in state court and only a "federal suit" can be considered. Doc. 10, p. 7. Mitsubishi cites no case in support of its argument and is wrong.

The letter and spirit of the first-filed rule are grounded on equitable principles. *EEOC v. University of Pennsylvania*, 850 F.2d 969, 977 (3d Cir. Pa. 1988), aff'd by 493 U.S. 182 (1990). A court must act "with regard to what is right and equitable under the circumstances and the law, and be directed by the reason and conscience of the judge to a just result. *Id.* Exceptions to the first-filed rule are *not* rare and are made when justice or expediency requires. *Schreiber v. Eli Lilly & Co.,* 2006 U.S. Dist. LEXIS 13477 (E.D. Pa. Mar. 27, 2006)(Davis, J.)

Under the first filed rule, state law determines when an action is commenced. *Med-Tec Iowa, Inc. v. Nomos Corp.*, 76 F. Supp. 2d 962, 968 (N.D. Iowa 1999). Under Pennsylvania law, an action is commenced by filing either a complaint or a praecipe for a writ of summons with the prothonotary. Pa. R. Civ. P. 1007. *Samii v. Allstate Ins. Co.*, 2010 U.S. Dist. LEXIS 85706 (E.D. Pa. Aug. 12, 2010). This case, of course, was commenced by the filing of a praecipe to issue writ of summons on April 15, 2014.

A number of courts have applied the first filed rule holding that a first filed Pennsylvania praecipe for writ of summons qualifies. *Med-Tec*, supra, is actually right on point. In *Med-Tec*, the precise issue was "what import a federal district court sitting in diversity jurisdiction must accord the filing of a praecipe for writ of summons … in applying the federal first-filed rule." The court ruled that it was the date of commencement, not service, that determined first filed status and that, the date of commencement, under Pennsylvania law, was the date the praecipe was filed. *Id. Country Home Prods. v. Schiller-Pfeiffer, Inc.*, 350 F. Supp. 2d 561, 570 (D. Vt. 2004) is another case where the court held that the date that the praecipe for writ of summon was filed in Pennsylvania State court was the first filed date. See also *Ceridian Benefit Servs. v. Schuh*, 2009 U.S. Dist. LEXIS 74251 (M.D. Fla. Aug. 21, 2009)(date that praecipe for writ of summons was filed in Pennsylvania state court was first filed date); and *Seithel v. Feldman & Pinto, P.A.,* 2011 U.S. Dist. LEXIS 101036 (D.S.C. Sept. 7, 2011)(same).

Mitsubishi contends, relying on *N. Am. Communs., Inc. v. Homeowners Loan Corp.,* 2007 U.S. Dist. LEXIS 4288 (W.D. Pa. Jan. 22, 2007), *Schiller-Pfeiffer, Inc. v. Country Home Prods.*, 2004 U.S. Dist. LEXIS 24180 (E.D. Pa. Dec. 1, 2004), *Freshtec Food Processing v. East Tray,* LLC, 2005 U.S. Dist. LEXIS 29335 (W.D. Pa. Nov. 22, 2005) and *Cygnus Ventures, Inc. v. EFS Nat'l Bank, N.A.*, 2000 U.S. Dist. LEXIS 8704 (E.D. Pa. June 2, 2000), that '[e]very court

in this Circuit" that has considered the issue has determined that the filing date of a writ of summons is irrelevant for purposes of the fist filed rule. Doc. 10, p. 8. Mitsubishi misstates the holdings of those cases.

In *N. Am. Communs., Inc. v. Homeowners Loan Corp.,* the Court did not determine that a writ of summons could not be considered first filed. Rather, the Court, concluded, mistakenly, that only actions in federal court can be considered for purposes of the rule.  There is no dispute, however, that the first-filed rule applies where, as here, one or both suits originated in state court. *Holiday Image LLC v. Victoria's Secret Stores Brand Mgmt.,* 2015 U.S. Dist. LEXIS 10062 (S.D.N.Y. Jan. 28, 2015)(relying on *Emplrs. Ins. v. Fox Entm't Group, Inc.*, 522 F.3d 271, 273-274, 278 (2d Cir. N.Y. 2008) (applying the "first-to-file" rule where a state court action was removed to federal court). Indeed, there is no reason from a policy perspective that it should matter where the first action was commenced. As one can see below even the *Schiller* court, relied on by Mitsubishi, disagreed with that proposition.

In *Schiller*, the first filed rule did not apply to an action commenced by writ of summons in Pennsylvania but it was not because the Pennsylvania action was commenced by writ. It was primarily because the action in Vermont had already progressed farther than the Pennsylvania case, and because the Vermont action had jurisdiction over all defendants whereas jurisdiction was an issue in the Pennsylvania action. *Id.* at pp. 34-36. None of those facts are present here. And, as to the effect of the fact that the Pennsylvania action was commenced by writ, the Court actually stated that the Pennsylvania action *was* the first filed lawsuit. *Id.* at p. 36.

*Freshtec Food Processing v. East Tray, LLC*, was not even a first filed case-it was a transfer case under 28 U.S.C. § 1404. Finally, *Cygnus Ventures, Inc.* was not a first filed case

either. It was a case seeking to enjoin concurrent federal court litigation under *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. Del. 1941).

Mitsubishi also argues that the filing of a praecipe to issue writ of summons should not count because the writ itself does not notify defendants of the nature of the claim against it. Doc. 10, p. 9. Mitsubishi offers no explanation as to how this matters to the first filed rule analysis. In any event, in regards to concerns about notice of claims, if any, Mitsubishi ignores that Pennsylvania allows a defendant, upon receipt of the writ of summons, to file a praecipe requiring the plaintiff, upon threat of *non-pros*, to file a complaint. See Pa. R. Civ. P. 1037. If Mitsubishi had any actual concerns about the claims Westcode was pursuing-which it did not-it could have agreed to accept service and file a praecipe to issue a rule on Westcode to file its complaint. Mitsubishi made a calculated move to refuse to accept service and to not take advantage of Rule 1037. Mitsubishi cannot be heard to complain about notice. See, *Masluf Realty Corp. v. Markel Ins. Corp.,* 2014 U.S. Dist. LEXIS 41435 (E.D.N.Y. Mar. 27, 2014)(court rejected argument that first filed meant first served where party resisted service court because it would be unjust to permit that same party to benefit from such tactics); and *Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 178 F. Supp. 2d 459 (S.D.N.Y. 2002) (same).

There is no reason to distinguish how or where an action is commenced for purposes of the first filed rule. The cases that have actually considered the issue, are in agreement that an action first commenced in Pennsylvania state court by praecipe to issue writ of summons is first filed. The same result should apply here.

   **2.  Assuming, *Arguendo* that this Case is not First Filed, the Rule should not Result in Dismissal of this Case because the New York Action was filed in Bad Faith, after Mitsubishi knew of this Suit, to try to avoid Litigation in this Forum.**

The statute of limitations in Pennsylvania for contract claims is four (4) years. 42 Pa.C.S. § 5525(a)(1). The Statute of limitations of limitation for contract claims in New York is,

generally, six (6) years. NY CLS CPLR § 213(2). As set forth in the complaint in this action, under the Pennsylvania limitations period, all of Mitsubishi's claims are barred. It was only after learning of the statute of limitations defense in the Pennsylvania Action that Mitsubishi hurriedly and secretly filed its case in New York so it could try to avoid litigation in a forum that it knew was not only imminent but actually pending, and to avoid unfavorable law. Mitsubishi, of course, ignores its motives.

Citing *Zelenkofske Axelrod Consulting L.L.C. v. Stevenson* 1999 U.S. Dist. LEXIS 12137 (E.D. Pa. Aug. 5, 1999) Mitsubishi represents that there are only 3 exceptions to the first filed rule: 1) where the plaintiff in the first-filed action acted in bad faith or 2) was motivated by forum shopping or where the second-filed suit had developed further at the time the motion was made. Doc. 10, p. 10. That misstates the law and that case. As the Court in *Zelenkofske* actually stated, and Mitsubishi omitted, the first filed rule also does not apply "*where the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum.*" *Id.* at p. 7 (citing *EEOC v. University of Pennsylvania, supra*)(emphasis added). A suit is "anticipatory" for the purposes of being an exception to the first-to-file rule if the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit by the defendant was imminent. *Sinclair Cattle Co. v. Ward,* 2015 U.S. Dist. LEXIS 6695, 15-16 (M.D. Pa. Jan. 21, 2015). Here, not only did Mitsubishi know the suit was imminent, Mitsubishi knew the suit was actually pending.

In *EEOC v. University of Pennsylvania* the EEOC issued a subpoena to the University and threatened to institute an enforcement action if the University did not comply within 20 days. Three days before expiration of the grace period -- the University responded by filing suit for declaratory judgment and injunctive relief in the district court for the District of Columbia. There

was law in the Third Circuit that was adverse to the University. The University's attempt to

dismiss the subsequently filed enforcement action on the basis of the first filed rule was rejected

because of the fact that it instituted suit in one forum in anticipation of the EEOC's imminent

suit in another, less favorable, forum. See, also, *Cent. Transp., LLC v. Mainfreight, Inc.*, 2015

U.S. Dist. LEXIS 17136 (E.D. Pa. Feb. 11, 2015)(first filed rule not applied where action in

Pennsylvania filed after plaintiff knew it was likely to be joined in action in Florida over same

claim and after plaintiff mysteriously cancelled settlement conference to file claim); *Jermax, Inc.*

*v. AK Steel Corp.,* No. 09-4438, 2010 U.S. Dist. LEXIS 63372, *26-27 (D.N.J. June 24,

2010)(finding that the first-filed rule should not be followed where the second-filing party

demanded payment of the debt by a certain date or else the party would "pursue collection of this

amount through any and all means available"); and *Auto. Serv. Ass'n of N.J., Inc. v. Rockland*

*Exposition, Inc.,* No. 08-3186, 2008 U.S. Dist. LEXIS 104212, p. 11 (D.N.J. Dec. 12, 2008)

(choosing not to apply the first-filed rule when the second-filed party had informed the first-filed

party of their intention to file suit, including the date on which they intended to file).

It is hard to imagine how Mitsubishi could have missed the anticipatory filing

exception to the first filed rule-especially where this action clearly meets the exception's criteria.

In any event, the New York Action was filed second but even if it is considered first, it was filed

only after receipt of specific, concrete indications that a suit by Westcode was imminent (indeed

pending) in a less favorable forum.

In addition, the manner in which the New York Action was filed was deceptive,

dishonest and in bad faith. By the time it actually filed the New York Action, Mitsubishi had

known of the Chester County Action for over 1 year. During that period, Westcode asked

Mitsubishi to accept service but Mitsubishi declined. In fact, not only did it decline to accept

service, but it asked Westcode *not* to serve the writ for fear of the effect that the writ would have on the willingness of senior management (back in Japan) to proceed with the settlement. Westcode agreed with that request for the sake of settlement and, at the time Mitsubishi commenced the New York Action Mitsubishi had led Westcode to believe that the parties were actually attempting to schedule due diligence to settle. Indeed, when the New York Action was filed, the Chester County Action was actually on the trial list and Mitsubishi asked Westcode to request to take the Chester County Action taken off the trial list in order to give the parties *more* time to settle. Mitsubishi even joined in a request for an administrative conference with Judge Sommer to discuss scheduling based on the representation that it needed more time to effectuate the settlement. Mitsubishi represented that it intended to participate in the state court litigation. Then, six days after receiving Westcode's conference memorandum with the reference to the statute of limitations defense, Mitsubishi mysteriously went silent until it filed the New York Action. The anticipatory filing exception precludes applicate of the first filed rule in this case.

### 3. This Case should not be Transferred to the Northern District of New York.

The party requesting the transfer has the burden of establishing that transfer is warranted. The Court must consider private and public factors to determine in which forum the interests of justice and convenience would be best served. *Leading Edge Logistics, LLC v. Cent. Trucking, Inc.*, 2005 U.S. Dist. LEXIS 11821, 2-3 (E.D. Pa. June 16, 2005). In this circuit, private factors include: (1) the plaintiff's forum preference; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the extent to which witnesses may be unavailable for trial in one of the forums; and (6) the extent to which books and records could not be produced in one of the forums. *Id.* Public factors include: (1) enforceability of a judgment; (2) practical considerations

that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty resulting from court congestion; (4) the local interest in deciding the controversy; (5) the public policies of the forums; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* This requires more than a showing "that the fora are equally appropriate." *Koken v. Lexington Ins. Co.,* 2004 U.S. Dist. LEXIS 22192, 6-7 (E.D. Pa. Nov. 2, 2004)(Davis, J). Unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail. *Ayling v. Travelers Prop. Cas. Corp.,* 1999 U.S. Dist. LEXIS 16716 (E.D. Pa. Oct. 27, 1999). The balancing of these factors does not support transfer in this case.

    **a.  The Plaintiff and Defendant's forum preference**

       Generally, a plaintiff's choice of forum should not be disturbed lightly. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. Pa. 1970) cert den. by 401 U.S. 910 (1971); and *Penda Corp. v. STK, LLC,* 2004 U.S. Dist. LEXIS 18235, 7-8 (E.D. Pa. Sept. 7, 2004). In addition, where one of the parties is foreign, however, the citizen party's district is always favored over the foreign party's choice of forum. See, *Lambton Mfg., Ltd. v. Young,* 1992 U.S. Dist. LEXIS 253 (E.D. Pa. Jan. 10, 1992).

       This is, of course not only Plaintiff's choice of forum-it is its home district. Mitsubishi, on the other hand, is a Japanese corporation. It has no home district. Mitsubishi's preference for the Northern District of New York carries no weight. Both factors, therefore, weigh against transfer to the Northern District.

    **b.  Where the claim arose**

       To determine the locus of operative facts, a court must look to the "site of the events from which the claim arises." *Avemco Ins. Co. v. GSF Holding Corp.,* 1997 U.S. Dist. LEXIS

13716 (S.D.N.Y. Sept. 5, 1997)(cited with approval by *Resource Bank v. Progressive Cas. Ins. Co.*, 2007 U.S. Dist. LEXIS 2980 (E.D. Pa. Jan. 11, 2007)). A breach of contract claim arises "at the place of performance of the contract . . ." *Monarch Envtl., Inc. v. Velocitor Solutions,* 2011 U.S. Dist. LEXIS 109790 (D.N.J. Sept. 27, 2011). Where the claim is an alleged failure to make a payment, the situs of material events (i.e. performance) is where the business decisions causing the breach occurred. *5381 Partners LLC v. Shareasale.com, Inc.,* 2013 U.S. Dist. LEXIS 136003, 45-46 (E.D.N.Y. Sept. 23, 2013) (quoting *JDA eHealth Sys. Inc., v. Chapin Revenue Cycle Mgmt., LLC,* No. 10 C 7781, 2011 WL 2518938, at p. 9 (N.D. Ill. June 23, 2011)).

 This case is essentially for breach of a contract to pay money and/or the payment terms of certain other contracts. If there was a breach—which there was not—the decision to breach, and the breach itself, occurred in Pennsylvania. No key operative fact *regarding the claims* under the MOU or any of the other contracts occurred in the Northern District of New York.[1] This factor does not favor transfer to the Northern District of New York.

 Where negotiations took place or where the contract was executed is usually not relevant where the cause of action is a breach for failure to pay. *See, Billing v. Commerce One, Inc.,* 186 F. Supp. 2d 375, 378 (S.D.N.Y. 2002) (finding that negotiations that took place in New York were not relevant because the main cause of action raised in the complaint was a breach of contract action arising from the defendant's mismanagement of a construction project); *see also Watson v. Cmty. Educ. Ctrs., Inc.,* 2011 U.S. Dist. LEXIS 89520 (M.D. Fla. Aug. 11, 2011) (suggesting that, in the case of breach of contract, the place where the breach occurred is the most important element in establishing the locus of operative facts because "[o]nly the events

---

[1] Although Westcode maintains an assembly plant in Binghamton, NY, the operative facts of this case—payments due, payments made, and payments allegedly missed under the MOU—have nothing to do with that facility or employees who work at that facility.

which directly give rise to a claim are relevant")(citing *Jenkins Brick Co. v. Bremer,* 321 F.3d 1366 (11th Cir. Ga. 2003)). In any event, the contracts were negotiated and executed in either Pennsylvania or Japan-not New York.

Mitsubishi, citing *Nowicki v. United Timber Co.*, 1999 U.S. Dist. LEXIS 12458 (E.D. Pa. Aug. 12, 1999) and *Strategic Learning, Inc. v. Wentz*, 2005 U.S. Dist. LEXIS 1609, 11-12 (E.D. Pa. Feb. 1, 2005) argues that where payments are "received" is an appropriate forum for venue purposes. Both cases actually say the exact opposite. *Nowicki* actually determined that the omission in terms of a failure to make payment occurred when and where the defendant resided (or where the payment was made from). The *Wentz* court said the same thing. *Wentz,* supra at pp. 11-12. Both *Nowicki* and *Wentz* would dictate that this case should not be transferred.

This factor does not favor transfer.

### c.  The convenience of the parties as indicated by their relative physical and financial condition.

Where an economic disparity between the parties exists the Court may consider the relative means of the parties in determining whether to transfer. *Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 177 (E.D.N.Y. 2003)(transfer favored where defendant suffered great financial losses and personnel declines in recent years and plaintiff was a national corporation with a huge pool of resources)

Mitsubishi is a large multinational corporation. On April 28, 2015, it announced its Fiscal YE 2015 results with net sales on a consolidated basis of 4,323.0 billion yen[2] which was a 7% increase from the previous year. It forecasts net sales of 4,370.0 billion yen for 2016. It makes no difference to Mitsubishi, either practically or financially, whether the case is in the Northern

---

[2] A yen equals approximately 0.00807070 dollars. *See,*
 http://www.xe.com/currencyconverter/convert/?Amount=1&From=USD&To=JPY

District of New York or the Eastern District of Pennsylvania as Mitsubishi is a foreign conglomerate with no real connection to this forum and the resources to litigate effectively in both forums. Dec EJW ¶ 26.

Westcode, on the other hand, has *gross* sales of only $10 million which are trending down from $30 million from before its line of credit was frozen as result of Mitsubishi's threats and dithering. It has significant cash flow problems that affect its ability to procure work and it has laid off over 100 employees in the last two years. It would be a hardship on Westcode, both practically and financially, to defend this case in the Northern District of New York. Dec EJW ¶ 28. The relative means of the parties does not favor transfer to the Northern District of New York.

### d. The extent to which witnesses may be unavailable for trial in one of the forums

The ability to use compulsory process[3] over potential witnesses is perhaps the single most important factor in a 1404(a) analysis." *Monarch Envtl., Inc. v. Velocitor Solutions,* 2011 U.S. Dist. LEXIS 109790, 10-11 (D.N.J. Sept. 27, 2011)(relying on *Newhall v. Chase Home Fin. LLC*, Civ. No. 10-2749, 2010 U.S. Dist. LEXIS 115690, 2010 WL 4387517, at *5 (D.N.J. Oct. 28, 2010)). "[F]act witnesses who possess first- hand knowledge of the events giving rise to the lawsuit, have traditionally weighed quite heavily in the 'balance of convenience' analysis." *Coppola v. Ferrellgas*, 250 F.R.D. 195, 199 (E.D. Pa. 2008); *Headon v. Colo. Boys Ranch*, 2005 U.S. Dist. LEXIS 44141 (E.D. Pa. May 5, 2005)(court should consider whether forum can compel attendance of third party witnesses). It reflects the inequities that can arise when a court is unable to compel witnesses to testify. *See Romano v. Banc of Am. Ins. Servs.*, 528 F. Supp. 2d 127, 133 (E.D.N.Y. 2007) ("Certainly to fix the place of trial at a point where litigants cannot

---

[3] See Fed. R. Civ. P. 45(b)(2) (subpoena may be served at any place within district or at any place outside of district within 100 miles from place of trial);

compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants.") (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)).

The most critical witnesses involving Mitsubishi's claim that Westcode failed to make payments under the MOU, LTTA, JVA or Projects are the witnesses to the key operative facts—the decision makers in regards to the business decisions causing the *alleged* breach. Those decision makers, Westcode's Chief Executive Officer, Edward Widdowson and its two former Chief Financial Officers, Gregory Touvelle and Cheri Casceres, are all in Pennsylvania. Dec EJW ¶ 22. Mr. Touvelle and Ms. Casceres are also former employees and, therefore, most likely require subpoenas to attend-which would not be available from the Northern District of New York.

In regards to Mitsubishi's claim under the MOU, there are no witnesses located in the Northern District of New York. The convenience of witness factor does not favor transfer to the Northern District of New York.

**e.  The extent to which books and records could not be produced in one of the forums.**

In regards to Mitsubishi's claim under the MOU, there are no records relevant to key operative facts located in the Northern District of New York-they are all located in Pennsylvania. Dec EJW ¶ 23. This factor does not favor transfer to the Northern District of New York.

**f.  The enforceability of a judgment.**

This factor is neutral.

**g.  Practical considerations that could make the trial easy, expeditious, or inexpensive**

This factor considers the ease, expediency, and expense of adjudicating the claims in the different venues. N*at'l Asset Mgmt., LLC v. Coleman*, 2010 U.S. Dist. LEXIS 86315 (W.D. Pa.

Aug. 23, 2010). The distance between the Philadelphia and Albany federal courthouses is significant-200 miles. There are no witnesses or sources of proof for the claims in this case in New York. The convenience of Westcode and witnesses and the access to proof will be significantly impacted if the matter is transferred to the Northern District of New York. On the other hand, Mitsubishi has no connection with the transferee forum. It has no office, plant or employee in that forum. There is no difference in ease, expediency, or expense to Mitsubishi if the case remains in this forum. This factor does not favor transfer to the Northern District of New York.

### h.  The relative administrative difficulty resulting from court congestion

This is a factor which helps to determine the interest of justice. In the interest of justice, all litigants should have their cases heard and determined promptly. This factor is examined by comparing the districts' median times from filing to disposition or trial. *Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 40 n.2 (D.D.C. 2010); and *Sheffer v. Novartis Pharms. Corp.,* 873 F. Supp. 2d 371, 380 (D.D.C. 2012).

According to the "Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September 30, 2014,"[4] the median time from filing to disposition in this district is 38.8 months. The median time from filing to disposition in the Eastern District of Pennsylvania is 35.9 months. This factor does not favor transfer to the Northern District of New York.

### i.  The local interest in deciding the controversy

---

[4] http://www.uscourts.gov/statistics/table/c-5/judicial-business/2014/09/30.

Courts have an interest in resolving matters of local interest. *Nat'l Asset Mgmt., LLC* supra at pp. 14-15 (citing *Gulf Oil Corp. v. Gilbert* 330 U.S. 501 (1947) ("In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home.")). Pennsylvania has a strong interest in providing a forum for its citizens to litigate their disputes. *Weight Loss Servs., LP v. Herbal Magic, Inc.*, 2011 U.S. Dist. LEXIS 108043 (E.D. Pa. Sept. 22, 2011). Pennsylvania has a "manifest interest in providing effective relief for its residents." *Coleman v. Lazy Days RV Ctr., Inc.*, 2005 U.S. Dist. LEXIS 40763 (M.D. Pa. May 6, 2005); *Banket v. GC Am., Inc.*, 2005 U.S. Dist. LEXIS 23550 (E.D. Pa. Oct. 11, 2005)(same); and *Bond v. Laser Spine Inst., LLC*, 2010 U.S. Dist. LEXIS 82736 (E.D. Pa. Aug. 11, 2010)(same).

Westcode is a Pennsylvania corporation. Its headquarters is in Chester County. The claims go to the heart of Westcode's viability. The claims have already forced Westcode to close a Pennsylvania plant, lay off Pennsylvania employees and scale back its business. The determination of the claims at issue in this litigation could determine whether Westcode remains in business.

On the other hand, Mitsubishi is a Japanese company with no direct presence in either the Northern District of New York or the Eastern District of Pennsylvania. If the judges and juries in the Northern District of New York have any local interest in Mitsubishi or its claims-which they do not- this Court and its juries have a much greater interest. See, generally *Pro Spice, Inc. v. Omni Trade Group, Inc.*, 173 F. Supp. 2d 336, 342 (E.D. Pa. 2001) aff'd by 128 Fed. Appx. 836 (3d Cir. 2005)(noting that forum where a party is a citizen has greater interest in case than a

forum where contract at issue is simply connected). This factor does not favor transfer to the Northern District of New York.

**j.    The public policies of the forums.**

This case involves a Pennsylvania corporation, whose headquarters are located in Pennsylvania, and contracts that were negotiated in Pennsylvania and, as to the claims at issue, performed in Pennsylvania. As a matter of public policy, Pennsylvania has a greater interest in this lawsuit than does New York. See, *Pro Spice, Inc.,* supra at 342 (noting public interest in case is greater where one of the parties were located in Pennsylvania). This factor does not favor transfer to the Northern District of New York.

**k.    The familiarity of the trial judge with the applicable state law in diversity cases.**

Although there is a New York choice-of-law clause in the MOU, it does not favor transfer in this case. This is a breach of contract case.  As this Court already observed, federal judges routinely apply the law of various jurisdictions and basic contract law principles do not vary widely. *Koken*, supra, at p. 14. Assuming *arguendo* that New York law applies, there is nothing to indicate that this Court would have difficulty in determining and applying New York contract law to this case*. Id.* This factor, along with the others, does not favor transfer to the Northern District of New York.

**B.  THIS COURT DOES NOT LACK JURISDICTION**

Mitsubishi contends that this Court lacks jurisdiction over counts I (LTA), II (JVA) and III (Projects) because they are not ripe. Doc. 10, p. 14. Mitsubishi contends that, as to those claims, there is no legitimate dispute between the parties. Mitsubishi is wrong.

In a declaratory judgment case, the question is whether the declaratory relief claim will serve a useful purpose in clarifying and settling the legal relations in issue, and will

terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the

proceeding. *Westfall Twp. v. Darwin Nat'l Assur. Co.,* 2015 U.S. Dist. LEXIS 1564, 15-16 (M.D.

Pa. Jan. 7, 2015), aff'd by 2014 U.S. App. LEXIS 2651 (3d Cir. Pa. 2014). To determine the

ripeness of declaratory judgment actions the Third Circuit has held that a court should look to the

following three factors, among others: (1) the adversity of interest between the parties; (2) the

conclusiveness of a judicial judgment; and (3) the practical help, or utility, of a judgment. *Death

Row Prisoners v. Ridge,* 948 F. Supp. 1258 (E.D. Pa. 1996), app. dis. by 1997 U.S. App. LEXIS

1682 (3d Cir. 1997).

   "With regard to the adversity element, a plaintiff need not have suffered a completed

harm to establish this element. … The plaintiff, however, must still demonstrate that the

probability of that future event occurring is 'real and substantial,' or of "sufficient immediacy

and reality." *Id.* at p. 1269 (citations omitted). "The conclusivity inquiry . . . goes to whether the

parties' rights will be definitively decided by the declaratory judgment." …Thus, a case is only

ripe when it involves "real and substantial controversy admitting of specific relief through a

decree of conclusive character, as distinguished from an opinion advising what the law would be

upon a hypothetical state of facts…. *Id.* (citation omitted). Lastly, "[t]he utility prong focuses on

'whether the parties' plans of action are likely to be affected by a declaratory judgment.' … In

other words, are the parties likely to change their conduct after the declaratory judgment is

issued." *Id.* (citations omitted).

   The probability of Mitsubishi bringing claims over the Projects, JVA and LTTA is real

and substantial. Mitsubishi has been asserting those liabilities against Westcode, in concrete

amounts, down to the dollar, for over 5 years. Complaint, ¶ 29.

Mitsubishi contends that it has not "asserted" claims under the JVA, LTTA and the Projects. What Mitsubishi means is that it has not "asserted" those claims in Court but it has continuously "asserted" them throughout the discussions over the last 5 years and has not ever indicated that it was dropping or discontinuing them. They, therefore, are an item Westcode must address in its financial records and an item that must be disclosed to potential lenders. The claims, therefore, continue to dog Westcode. They need to be resolved or Westcode will have to shut its doors.

The declaratory relief sought here is for specific relief through a decree that will conclusively determine Mitsubishi's claims. The facts are not hypothetical. The amounts are real (at least according to Mitsubishi), the contracts are real, and the alleged date that they payments were due are real and the parties have been identified. Courts exercise jurisdiction under the Declaratory Judgment Act in contract disputes. See, e.g., *Krajewski v. Am. Honda Fin. Corp.,* 557 F. Supp. 2d 596, 611-12 (E.D. Pa. 2008).

Lastly, a declaratory judgment will definitely affect the parties' plans of action. Mitsubishi's claims, which it will neither bring, settle nor forget, hang over Westcode like the Sword of Damocles. It has cost Westcode its lender, customers, work and employees. Westcode's future depends on the resolution of these claims.

Mitsubishi relies heavily on *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 328 (3d Cir. N.J. 2014). In *Williams*, unlike this case, it was the potential claimants (comparable to Mitsubishi here) who filed a declaratory judgment action for a determination that *if* they brought suit in the future, would certain statutes of limitations and *res judicata* defenses apply. The statute of limitations issue was considered abstract and inconclusive because the identity of the parties, the nature of the claims and defenses, and the substantive law to be applied were all

unknown. *Id.* at 328. The Court said the request resembled that of a prisoner who sued to prevent the state from invoking an affirmative defense in an anticipated, but unfiled, section 1983 claim. That concern is not present here. In this case, we know the parties, the facts, the alleged due dates of payments and the applicable law. A declaratory ruling in this case would be conclusive of all claims and end the dispute.

Mitsubishi suggests that the only time a declaratory judgment can be brought is after claims have actually been asserted in court. Doc. 10, p. 18. That is wrong. Claims do not have to actually be asserted in court to afford declaratory relief. By way of example, in *Pic-A-State Pa. v. Reno,* 76 F.3d 1294, 1299 (3d Cir. Pa. 1996), cert den. by 517 U.S. 1246 (1996), the Court held that there was sufficient adversity to create a justiciable controversy by the mere fact that a state would not guaranty that it would *not* prosecute plaintiff under a new law. Mitsubishi has never said it would forget or forgo its alleged claims under JVA, LTTA or Projects.

Declaratory relief is appropriate here because it will free Westcode from stale, lingering claims and permit it to procure refinancing so it can rebuild its business. It will serve a useful purpose in clarifying and settling the legal relations between the parties and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding.

## C.  THIS COURT SHOULD NOT DISMISS THIS CASE AS A MATTER OF DISCRETION

Mitsubishi ignores that the Court's "reasoned" discretion to decide whether to exercise declaratory judgment jurisdiction under section 2201 depends on the following 4 factors: (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 140 (3d Cir. Pa.

2014). As discussed above, items 1 and 2 are met here. See, pp. 14-22 & 24, supra. As to item 3, it is critical to Westcode's viability that it finally determine the liabilities Mitsubishi has been "asserting" under the MOU, LTTA, JVA[5] and the Projects. As to item 4, the citizens and juries of this Commonwealth have a clear and indisputable interest in providing a forum to one of its citizens to resolve disputed claims (see, p. 21, supra) and there is no parallel state court action pending implicating federalism concerns. Indeed, this *was* a state court action but Mitsubishi removed it which makes Mitsubishi's request for this Court to now refrain from exercising jurisdiction that it asked the Court to exercise all the more disingenuous. Finally, there is no other remedy available to Westcode to clarify its rights and liabilities especially as to Counts I, II and III.

## IV. __CONCLUSION__

Mitsubishi's motion to dismiss should be denied.

**PHILLIPS, CAMPBELL & PHILLIPS, LLP**


/s/ Patrick C. Campbell, Jr.
Patrick C. Campbell, Jr.
Attorney I.D. No. 53350
314 N. Middletown Road
Lima, PA  19037
610/548-7100
610/565-7427 (fax)
Attorneys for Defendants

Dated: July 15, 2015

---

[5] Mitsubishi points out that it has not "asserted" claims under the JVA, LTTA and the Projects but as set forth on above, that is not true. Mitsubishi has been "asserting" claims against Westcode for $30,750,955.00 allegedly arising out of the LTA, JVA and/or the Projects for at least the last 5 years. As to the overlapping claim, Count IV, a motion to dismiss is pending in the New York Action. Further, the Northern District of New York has little interest in the outcome of these claims or these parties and is not a convenient forum for either parties or witnesses. Any claim Mitsubishi wants to raise, it can raise, and should have raised, in this case.

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WESTCODE, INC.                          :
                                        :
              Plaintiff,                :
                                        :
      v.                                :      Case No. 15-cv-02971-LDD
                                        :
MITSUBISHI ELECTRIC CORP.               :
                                        :
              Defendant.                :

## CERTIFICATE OF SERVICE

I, Patrick C. Campbell, Jr., Esquire, do hereby certify that a true and correct copy of Response to Motion to Dismiss has been served upon the following counsel via email on today's date:

William T. Hangley, Esquire
***HANGLEY, ARONCHICK, SEGAL, PUDLIN & SCHILLER***
One Logan Square, 27th Floor
Philadelphia, PA  19103
whangley@hangley.com


Of COUNSEL:
Terrence J. Truax, Esquire
Catherine L. Steege, Esquire
Devlin Su, Esquire
***JENNER & BLOCK, LLP***
353 North Clark Street
Chicago, IL  60654-3456


PHILLIPS, CAMPBELL & PHILLIPS, LLP


/s/ Patrick C. Campbell, Jr.
Patrick C. Campbell, Jr
ID No. 53350
314 N. Middletown Road
Lima, PA  19037

610/548-7101
Attorneys for Plaintiff

**Dated July 15, 2015**