IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WESTCODE, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MITSUBISHI ELECTRIC CORP. | : | NO. 15-2971 |

ORDER

AND NOW, this 8th day of December 2015, upon consideration of Defendant Mitsubishi Electric's motion to dismiss or transfer (Doc. No. 10), Plaintiff Westcode's response (Doc. No. 11), Defendant's reply to Plaintiff's response (Doc. No. 14), and Plaintiff's sur-reply (Doc. No. 17), it is hereby ORDERED that Defendant's motion to transfer is GRANTED. The Clerk of Court is directed to transfer this matter to the United States District Court for the Northern District of New York.

I.      Factual and Procedural Background

The present action arises from a contractual dispute between Plaintiff Westcode and Defendant Mitsubishi. In January of 1997, the parties entered into an agreement—the License and Technical Assistance Agreement ("LTAA")—under the terms of which Defendant agreed to provide rail car designs to Plaintiff in exchange for an initial payment by Plaintiff of $900,000 and future royalties on net sales of the finished product. (Notice of Removal Ex. A, Compl. ¶¶ 7–8, Doc. No. 1.) In November of 1997, the parties formed the "Joint Venture Agreement" ("JVA"), which governed the parties' assembly and sale of HVAC units. (Compl. ¶¶ 11–14.) The parties' contractual relationship eventually deteriorated, and Westcode fell behind on its payments to Defendant. (Compl. ¶ 23.) The parties then entered into a new agreement in

November of 2008—entitled the "Memorandum of Understanding" ("MOU")—which restructured the payment terms of the parties' existing contracts.  (Compl. ¶ 24.)

Over the following years, the parties continued to experience conflict related to their agreements.  The parties eventually began settlement discussions, which continued for approximately five years.  (Decl. of Patrick C. Campbell Ex. G, Mar. 26, 2015 Letter from Patrick C. Campbell, Jr. to the Chester County Ct., Doc. No. 11-2.)  However, on April 14, 2014, Westcode filed a praecipe to issue a writ of summons—which stated merely that "Plaintiff, Westcode, Inc., has commenced action against [Mitsubishi]"—in the Court of Common Pleas of Chester County, Pennsylvania.  (Def.'s Mem. Law Supp. Mot. Dismiss Compl. Ex. E, Writ of Summons, Doc. No. 10-5.)  Plaintiff did not, however, serve the writ on Defendant or file a complaint.  (Pl.'s Mem. Law. Supp. Resp. to Def.'s Mot. Dismiss 5, Doc. No. 11.)  After learning of the praecipe, Defendant's attorney wrote in an email to counsel for Westcode, "My best advice to you on whether you should serve the writ of summons is that you should wait and give [Mitsubishi] a chance to respond officially to [Westcode]'s offer.  Obviously, whether or not to serve the writ is your decision, but I believe it would harm the process that we are going through."  (Decl. of Patrick C. Campbell Ex. B, July 11, 2014 Email from Perry Pappous to Patrick C. Campbell, Jr., Doc. No. 11-2.)  The writ was reissued on July 14, 2014.  (Decl. of Patrick C. Campbell Ex. A, <u>Westcode Inc. v. Mitsubishi Elec. Corp.</u>, No. 2014-03283-MJ (Pa. Ct. C.P.), Doc. No. 11-2.)

After the writ was first issued and continuing over the course of the following twelve-month period, the parties continued their settlement discussions.  (Pl.'s Resp. 3–7.)  On September 22, 2014, counsel for Plaintiff submitted a letter to the Chester County Court stating that no complaint had been filed because "the parties have been endeavoring to resolve their

2

differences and have been making progress in that regard." (Decl. of Patrick C. Campbell Ex. E, Sept. 22, 2014 Letter from Patrick C. Campbell, Jr. to the Chester County Ct. of Common Pleas, Doc. No. 11-2.)  On March 13, 2015, the Chester County Court listed the case for trial.  (Decl. of Patrick C. Campbell Ex. F, Mar. 13, 2015 Letter from Civil Ct. Administrator to Counsel, Doc. No. 11-2.)  Counsel for Plaintiff submitted a letter, however, advising the court that the parties had been engaging in settlement discussions for approximately five years, that "the parties made enough progress that Defendant scheduled to conduct due diligence," that the case "was commenced by writ of summons as, essentially, a saving-type action," that "[n]o complaint has been filed and no discovery has been taken as the parties have made significant progress since [the case's] commencement," and requesting an administrative conference to discuss scheduling.  (Decl. of Patrick C. Campbell Ex. G, Mar. 26, 2015 Letter from Patrick C. Campbell, Jr. to the Chester County Ct., Doc. No. 11-2.)  The Chester County Court terminated the listed trial date and scheduled an administrative conference for April 30, 2015.  (Decl. of Patrick C. Campbell Ex. H, Apr. 9, 2015 Letter from Judge Jeffrey R. Sommer to Patrick C. Campbell & Perikis A. Pappous, Doc. No. 11-2.)  In its administrative conference memorandum, Plaintiff described the case as about a breach of contract and mentioned under the "special comments/legal issues" section, without elaboration, an unspecified statute of limitations issue.  (Decl. of Patrick C. Campbell Ex. I, Pl.'s Administrative Conference Mem. 1–2, Doc. No. 11-2.)

Mitsubishi filed suit against Westcode in the Northern District of New York on April 27, 2015, alleging that Westcode breached its obligations under the MOU.  (Mot. Dismiss 3.)  It served a copy of the complaint on Westcode on the same day.  (Mot. Dismiss 3.)  Currently pending before the United States District Court for the Northern District of New York is a motion to dismiss filed by Westcode, who argues that the New York action should be dismissed

under the first-to-file rule.  (Mem. Supp. Westcode's Mot. Dismiss 9, <u>Mitsubishi Elec. Corp. v. Westcode, Inc.</u>, No. 3:15-cv-00505 (MAD-DEP) (N.D.N.Y. June 29, 2015), Doc. No. 13-1.)

On May 5, 2015, Westcode filed a four-count action for declaratory judgment in the Court of Common Pleas of Chester County.  Westcode alleges that all claims that Mitsubishi could have under the various agreements between the parties, including under the LTAA, JVA, and MOU, are barred by the applicable statutes of limitations.  (Compl. ¶¶ 34, 37, 39, 42.)  Mitsubishi removed the action to this Court on May 27, 2015.  (Notice of Removal 3, Doc. No. 1.)  Mitsubishi filed a motion to dismiss or transfer Plaintiff's complaint on July 1, 2015, and Plaintiff responded.  Defendant replied to Plaintiff's response, and Plaintiff filed a sur-reply.  Defendant's motion is now ripe for our review.

II.   Discussion

Before the Court is Defendant's motion for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Mot. Dismiss 1.)  Defendant argues that this Court should dismiss or transfer Count IV of this action based on the first-filed rule because it involves the same subject matter as Defendant's first-filed action in New York.  (Mot. Dismiss 5.)  Defendant also contends that this Court lacks subject-matter jurisdiction over Counts I–III in Plaintiff's complaint because Plaintiff's claims are not yet ripe.  (Mot. Dismiss 14.)  These counts should therefore be dismissed, Defendant argues—though if the Court does not dismiss them, Defendant asks the Court to transfer Counts I–III to the Northern District of New York.  (Mot. Dismiss 12.)  In the alternative, Mitsubishi asks the Court to exercise its discretion and dismiss Westcode's complaint entirely.  (Mot. Dismiss 18.)

Plaintiff argues in response that the first-filed rule does not mandate dismissal or transfer because Plaintiff filed a praecipe to issue a writ of summons in April 2014, approximately one

year before Defendant commenced its action in the Northern District of New York; thus Plaintiff's action was filed first. (Pl.'s Resp. 7–10.) Moreover, Plaintiff contends that even if its action were not the first-filed action, Defendant's New York suit constituted an anticipatory filing and Defendant acted in bad faith; therefore, the exceptions to the first-filed rule apply. (Pl.'s Resp. 10–13.) Further, according to Plaintiff, the balance of the public and private factors under 28 U.S.C. § 1404(a) do not warrant transfer to the Northern District of New York. (Pl.'s Resp. 13–21.) Lastly, Plaintiff argues that this Court has subject-matter jurisdiction and that it should not exercise its discretion to dismiss the matter. (Pl.'s Resp. 21–25.)

We agree with Defendant that the first-filed rule applies to this action and transfer this matter to the United States District Court for the Northern District of New York for the reasons detailed below.

A. The First-Filed Rule

The Third Circuit has stated that under the first-filed rule, "'[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.'" E.E.O.C. v Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988) (alteration in E.E.O.C.) (quoting Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941)). "[T]his policy of comity has served to counsel trial judges to exercise their discretion by enjoining the subsequent prosecution of 'similar cases . . . in different federal district courts.'" Id. (quoting Compagnie Des Bauxites De Guinea v. Ins. Co. of N. Am., 651 F.2d 877, 887 n.10 (3d Cir. 1981)). The first-filed case is the federal civil action filed first in time, whether by removal or through the actual filing of a complaint. See N. Am. Commc'ns, Inc. v. Homeowners Loan Corp., No. 3:2006-147, 2007 WL 184776, at *3 (W.D. Pa. Jan. 22, 2007). For the first-filed rule to apply,

the subject matter of the two actions must "'substantially overlap[].'" QVC, Inc. v. Patiomats.com, LLC, No. 12-3168, 2012 WL 3155471, at *3 (E.D. Pa. Aug. 3, 2012).

In the instant matter, under the first-filed rule, Mitsubishi's complaint in the Northern District of New York was filed before Westcode's Pennsylvania action. Here, the parties in both the New York action and the Pennsylvania action are the same. The actions also involve substantially overlapping subject matter, since they both relate to an alleged breach of the MOU and the various contractual obligations between the two parties. Plaintiff Westcode seeks in this Court a declaratory judgment regarding an affirmative defense to Mitsubishi's claim in the Northern District of New York. Resolution of the matter in the Northern District of New York would involve litigating Westcode's defense, should it raise the issue in the New York court. Further, Defendant Mitsubishi commenced its action in the Northern District of New York in April 2015, a month before Plaintiff's Pennsylvania state court action was removed to this Court in May 2015. (See Notice of Removal 3.) Under a straightforward application of the first-filed rule, the United States District Court for the Northern District of New York was the first federal court with possession of the subject matter of this action.

Plaintiff's argument that its suit was filed first because Plaintiff filed a praecipe for a writ of summons well before Defendant filed an action in New York is without merit. The cases Plaintiff cites to support its contention that the first-filed rule applies to suits involving concurrent state and federal matters are from districts outside our own and apply law from other circuits. (See Pl.'s Resp. 8–9 (citing cases from federal district courts in Iowa, Vermont, Florida, South Carolina, and New York).) But under the law of the Third Circuit, for the purposes of the first-filed rule, the first-filed case is the first-filed federal—not state—action. See, e.g., E.E.O.C. v Univ. of Pa., 850 F.2d 969, 971 (3d Cir. 1988); Schiller-Pfeiffer, Inc. v. Country Home Prods.,

6

Inc., No. 04-cv-1444, 2004 WL 2755585, at *9 (E.D. Pa. Dec. 1, 2004); Am. Soc'y for Testing & Materials v. Corrpro Cos., 254 F. Supp. 2d 578, 580 (E.D. Pa. 2003).  Plaintiff's Pennsylvania suit was not removed to federal court until May 2015, a month after Defendant commenced its federal action in New York. Thus Plaintiff's action was filed second under the first-filed rule as it has been interpreted by the Third Circuit and by courts in this district.

      B.  Exceptions to the First-Filed Rule

"Only under 'rare or extraordinary circumstances' should a district court deviate from the application of the first-filed rule.  Such circumstances include 'inequitable conduct, bad faith, or forum shopping,' among others."  D&L Distrib., LLC v. Agxplore Int'l, 959 F. Supp. 2d 757, 766 (E.D. Pa. Mar. 26, 2013) (quoting E.E.O.C., 850 F.2d at 972).  An exception may also be appropriate where the second suit has developed further than the initial suit or if the first-filing party acted in anticipation of an imminent suit in a less favorable forum.  Colony Nat'l Ins., Co. v. UHS Children Servs., Inc., No. 09-2916, 2009 WL 3007334, at *2 (E.D. Pa. Sept. 11, 2009) (citing EEOC, 850 F.2d at 976–77).

In assessing whether departure for anticipatory filing is warranted, courts look for evidence of "specific, concrete indications that a suit was imminent."  Sinclair Cattle Co. v. Ward, 80 F. Supp. 3d 553, 561 (M.D. Pa. 2015); see Telebrands Corp. v. martFIVE, LLC, No. 13-3374 (JLL), 2013 WL 4675558, at *5–6 (D.N.J. Aug. 30, 2013) (departing from first-filed rule for anticipatory filing where plaintiff filed suit after receiving cease-and-desist letter from defendants stating that unless plaintiff replied by May 29, 2013, defendant would commence immediate legal action).

Engaging in settlement negotiations prior to filing suit will not, standing alone, constitute bad faith. See Keating Fibre Int'l v. Weyerhaeuser Co., 416 F. Supp. 2d 1048, 1052 (E.D. Pa.

7

2006) ("Courts in this circuit have found evidence of bad faith when the parties are involved in settlement negotiations, one party lays out a deadline by which they will initiate litigation should settlement not be reached, and just prior to that deadline, the other party preemptively files a declaratory judgment action."); see also Zelenkofske Axelrod Consulting, L.L.C. v. Stevenson, No. 99-3508, 1999 WL 592399, at *3 (E.D. Pa. Aug. 5, 1999) ("A party does not relinquish its right ultimately to decide to sue in its forum of choice by engaging in settlement discussions. A party by virtue of engaging in settlement discussions is not obligated to provide notice to his adversary that he has decided to sue to allow the adversary to commence suit first."). Departure from the first-filed rule for forum-shopping is only appropriate where forum-shopping was "the sole reason for choosing one forum over another and thus will rarely be found where the first action was filed in a logical place." See Zelenkofske, 1999 WL 592399, at *3 (finding the forum-shopping exception inapplicable where the Eastern District of Virginia was a logical forum for the first-filed action since the employment agreements were negotiated and executed in that forum, defendants worked and lived there, and it was the district in which defendants offered the services at issue in the claim).

 Plaintiff contends that, even if Defendant's New York suit were filed first, several exceptions to the first-filed rule apply in this matter. Plaintiff specifically alleges that Defendant filed its action in anticipation of litigation in a less favorable forum. (See Pl.'s Resp. 10–13.) According to Plaintiff, Defendant had specific, concrete indications that a suit by Westcode was imminent—litigation had, in fact, commenced—and the six-year statute of limitations in New York was more favorable to Defendant than the four-year period in Pennsylvania. (Pl.'s Resp. 10–13.) Plaintiff further avers that the writ of summons properly commenced the action under Pennsylvania Rule of Civil Procedure 1007, that Defendant had actual notice of the pending

lawsuit against it as required under McCreesh v. City of Philadelphia, 888 A.2d 664 (Pa. 2005), and that absence of service did not cause the state court action to lapse. (Pl.'s Sur-Reply Supp. Resp. Def.'s Mot. Dismiss 1–3, Doc. No. 17.) Plaintiff also argues that Defendant acted in bad faith because it surreptitiously filed suit in New York while the parties were in the midst of settlement discussions. (See Pl.'s Resp. 10–13.) Plaintiff maintains that Mitsubishi refused to accept service of the writ or take advantage of Pennsylvania Rule of Civil Procedure 1037, asked Westcode not to serve the writ, and misled Plaintiff by persuading it to believe that Defendant genuinely wished to settle. (Pl.'s Resp. 10, 12–13.)

Defendant responds that the exceptions to the first-filed rule apply in only rare circumstances, and the facts of this case do not support departure from the rule. Defendant argues that its actions did not constitute anticipatory filing because there was no specific threat of litigation with respect to the MOU. (Def.'s Reply Mem. Law Supp. Mot. Dismiss Compl. 5, Doc. No. 14.) According to Defendant, the Pennsylvania writ of summons had lapsed since Westcode had not served the summons within ninety days, Westcode's timeliness defense did not exist at the time the praecipe was filed, and Westcode had at that point discussed only settlement, not litigation. (Def.'s Reply 5–6.) Plaintiff's "bare-bones writ" and its actions over the course of the year following filing of the praecipe did not apprise Defendant of the nature of Plaintiff's claim, give Defendant an indication that litigation of specific claims was imminent, or mention any deadline by which Plaintiff would file a complaint. (Def.'s Reply 5–6; Mot. Dismiss 9–10.) Moreover, Defendant maintains that courts have predominantly applied the anticipatory-filing exception to dismiss first-filed actions for declaratory judgment, and not to dismiss a natural plaintiff's first-filed coercive suit. (Def.'s Reply 4–5.) Defendant also argues that it did not engage in forum-shopping because the Northern District of New York is a logical

9

forum in which to litigate its claim: Westcode's manufacturing plant is located in that district, the agreement was executed in New York and governed by New York law, and the agreement related to projects that would be performed in New York. (Mot. Dismiss 11.) Defendant additionally maintains that filing a suit during settlement negotiations does not constitute bad faith. (Mot. Dismiss 10–11.)

For the reasons outlined below, we hold that no exceptional circumstances warrant departure from the first-filed rule.

        1. Anticipatory-filing

According to Plaintiff, Defendant knew that suit in Pennsylvania was imminent and that, in fact, litigation had already commenced through Plaintiff's filing of a praecipe for a writ of summons, a valid means of commencing an action in Pennsylvania state court. (Pl.'s Resp. 11). But notwithstanding the writ's filing, the record before us gives no indication that litigation was truly in the air such that Defendant's actions constituted anticipatory filing. Plaintiff's writ stated merely that an action had been commenced against Defendant, without specific factual details, formal allegations, or an identified prayer for relief.[1] This bare writ did not apprise Defendant of any concrete claims against it, and thus there were no indications that any specific litigation was imminent. See Schiller-Pfeiffer, Inc. v. Country Home Prods., Inc., No. 04-CV-1444, 2004 WL 2755585, at *10 (E.D. Pa. Dec. 1, 2004) (declining to find anticipatory filing by the defendant though plaintiff had filed a writ of summons before defendant filed a federal complaint in another forum because plaintiff had not filed a complaint until after defendant's

---

[1] The state court docket does indicate that Plaintiff's praecipe for a writ of summons was for a declaratory judgment. (Decl. of Patrick C. Campbell Ex. A, Westcode Inc. v. Mitsubishi Elec. Corp., No. 2014-03283-MJ (Pa. Ct. C.P.), Doc. No. 11-2.) This fact does not alter our conclusion, however, since Plaintiff never specified the basis of its cause of action or set forth any factual allegations until it filed a complaint, over one year after filing the initial writ of summons and after Defendant commenced its action in New York.

federal action was commenced and the sparse writ contained no specific allegations regarding the grounds of plaintiff's complaint).

     Westcode's conduct after the writ was issued did not exhibit an imminent intent to pursue specific claims against Defendant. In the year following Plaintiff's filing of the praecipe, the parties continued their settlement discussions, which had been ongoing for several years, and neither party made trial preparations. Plaintiff never served the writ of summons on Defendant and did not file a complaint until after Mitsubishi commenced the New York action. Plaintiff's letters to the Chester County Court repeatedly stated that no complaint had been filed and that discovery had not been conducted because the parties were in the midst of settlement discussions. Indeed, Plaintiff described the writ as a "saving-type action" (Decl. of Patrick C. Campbell Ex. G, Mar. 26, 2015 Letter from Patrick C. Campbell, Jr. to the Chester County Ct., Doc. No. 11-2), which suggests that Plaintiff lacked the intent to actively pursue a specific cause of action against Defendant both when the writ was filed and in the ensuing months. Though the Chester County Court initially listed the matter for trial, it subsequently terminated the scheduled date on the parties' request. That the court then scheduled an administrative conference is of no legal moment, as the conference was organizational in nature and Plaintiff still had not communicated any intent to pursue specific claims. Plaintiff argues that its administrative conference memorandum specified the nature of its claim against Defendant. To the contrary, the memorandum stated that Plaintiff had a breach of contract claim and that Plaintiff "contend[ed] that charges for Defendant's deliverables were excessive." (Decl. of Patrick C. Campbell Ex. I, Pl.'s Administrative Conference Mem. 1–2, Doc. No. 11-2). Plaintiff's memorandum thus gave no indication that Plaintiff intended to file an action for declaratory

11

judgment to establish that the applicable statutes of limitation for Defendant's breach of contract claim had expired.

Moreover, though Plaintiff argues otherwise, Westcode's writ had lapsed because Plaintiff did not timely serve Defendant with the writ following its issuance. Pennsylvania Rule of Civil Procedure 404 provides that "[o]riginal process shall be served outside the Commonwealth within ninety days of the issuance of the writ or the filing of the complaint or the reissuance or the reinstatement thereof." Pa. R. Civ. P. 404; cf. Moses v. T.N.T. Red Star Exp., 725 A.2d 792, 796 (Pa. Super. Ct. 1999) ("In the instant case, the praecipe for the writ of summons was filed on October 19, 1995, and the writ was issued the same day. Therefore, the writ of summons had to be served on the appellees within thirty days of its issuance, that is by November 18, 1995 in order to prevent its expiration."); Salomoni v. Phillips, 64 Pa. D. & C. 4th 181, 184 (C.P. 2003) ("The clerk issued the writ of summons the same day [that plaintiff filed the praecipe for writ of summons], but plaintiff's counsel did not make any effort to deliver this writ to the sheriff for service on the defendants. Thirty days after issuance of the writ, it expired for lack of service.").

Westcode acknowledges that it did not attempt to effectuate service, but argues that its inaction was justified because Mitsubishi refused to accept service and asked Westcode not to attempt to serve the writ. However, the record before us belies Westcode's contentions. The correspondence to Westcode from Perry Pappous, general counsel for Mitsubishi, indicates that Pappous merely stated that his advice was that serving the writ could stall settlement discussions but that the decision to serve the writ was entirely Westcode's. (Decl. of Patrick C. Campbell Ex. B, July 11, 2014 Email from Perry Pappous to Patrick C. Campbell, Jr., Doc. No. 11-2.) Plaintiff points to no other evidence to support its contention that Mitsubishi refused service, that

Defendant asked Westcode to undertake a particular course of conduct, or that Plaintiff attempted to serve process on Mitsubishi. Thus, even if a barebones writ could suffice to establish imminent or pending litigation for the purposes of the anticipatory-filing exception, litigation in Pennsylvania was not imminent when Defendant filed its action in New York because Plaintiff had allowed its writ to lapse.[2]

    2. Bad faith

Plaintiff has not met its burden of establishing bad faith by Mitsubishi. Engaging in settlement discussions does not constitute bad faith, without more. That the settlement discussions had been going on for over five years before Defendant filed its action in New York does not support a finding that Mitsubishi misled Westcode and that it did not genuinely intend to reach a settlement. Instead, the length of negotiations suggests that Defendant seriously attempted to cooperate with Plaintiff over an extended period of time. The parties had set no deadline by which they planned to conclude settlement discussions. The record does not support a finding that Mitsubishi raced to the courthouse before a litigation deadline to gain a tactical advantage. In fact, Westcode itself commenced an action when it filed the praecipe in 2014;

---

[2] Citing Salomoni and McCreesh, Plaintiff argues that "repeatedly reissuing writs is meaningless" and that "putting a defendant on actual notice of the lawsuit satisfies plaintiff's obligation not to stall." (Pl.'s Sur-Reply 2.) We find Plaintiff's arguments unpersuasive. The Salomoni and McCreesh courts were considering service requirements because, in both cases, whether service had been properly effectuated determined whether the applicable statutes of limitations had expired. See McCreesh v. City of Phila., 888 A.2d 664, 667, 674 (Pa. 2005) ("Neither our cases nor our rules contemplate punishing a plaintiff for technical missteps where he has satisfied the purpose of the statute of limitations by supplying a defendant with actual notice."); Salomoni v. Phillips, 64 Pa. D. & C. 4th 181, 182 (C.P. 2003) ("Because the plaintiff did not make any effort to serve the initial writ of summons in a timely manner, the writ expired and the praecipe for issuance of the writ did not toll the statute of limitations."). Here, we consider whether Plaintiff's writ has expired only to decide whether Defendant was on notice of imminent and pending litigation against it. Though in Salomoni, the court stated that repeatedly reissuing the writ was unnecessary to toll the statute of limitations, the court also held that the plaintiff's failure to timely serve a writ of summons on the defendant caused his original writ to expire and that a good-faith effort to serve the writ was necessary to toll the statute of limitations. 64 Pa. D. & C. 4th at 184–87. In McCreesh, while the court held that dismissal was unnecessary where a plaintiff supplied a defendant with actual notice but took some technical misstep with respect to service, 888 A.2d at 227, the plaintiff there had actually attempted to effectuate service, 888 A.2d at 666–67. In contrast, in the case before us, Westcode did not make even a procedurally defective attempt to serve Mitsubishi. As detailed above, we are unconvinced by Plaintiff's arguments that its inaction was justified, and we find that Plaintiff did not make a good-faith attempt to serve Defendant or advise Defendant of Plaintiff's specific claims. Plaintiff's writ had therefore expired and did not provide Defendant with notice of any imminent charge against it.

Westcode cannot simultaneously maintain that Mitsubishi's action constituted bad faith and that its own action did not. Although an administrative conference had been scheduled for April 30th and Mitsubishi filed its action three days before that date, an administrative conference is not a deadline to file a complaint or commence litigation of specific, concrete claims. Lastly, as discussed already, Westcode chose not to serve Mitsubishi. Defendant did not refuse to accept service, but stated only that Plaintiff's choice to pursue litigation would hamper the parties' settlement efforts. This statement does not indicate bad faith—it is reasonable to communicate that active pursuit of litigation by the other party might delay out-of-court resolution of the parties' dispute.

        3. Forum shopping

We are unpersuaded that Defendant commenced suit in New York solely to obtain a more favorable forum in which to litigate its claims. The Northern District of New York is a logical forum in which to bring the action. Westcode's manufacturing plant is located within the Northern District of New York and thus Plaintiff does business in that district (Notice of Removal ¶ 4), the MOU was negotiated and executed in Binghamton, New York (Def.'s Reply Ex. A, Decl. of Atsushi Takase ¶¶ 10, 14–16, Doc. No. 14), and the MOU concerned payment for projects performed in New York (Notice of Removal Ex. A, Compl. Ex. C, MOU 1.). Additionally, the MOU included a clause stating that the agreement would be governed by the laws of the state of New York, so filing in New York offers no tactical advantage over filing in this Court. (MOU art. 9.)

    C. Transfer Pursuant to 28 U.S.C. § 1404(a).

Having concluded that Mitsubishi's New York action was the first-filed federal action and that there are no exceptional circumstances meriting departure from the first-filed rule, we turn

now to the issue of whether dismissal or transfer of Westcode's Pennsylvania action is warranted.

If a court finds that the first-filed rule applies and that the action filed before it was filed second, it may choose to dismiss, stay, or transfer the later-filed action. E.g., Keating Fibre Int'l v. Weyerhaeuser Co., 416 F. Supp. 2d 1048, 1052–53 (E.D. Pa. 2006). Under 28 U.S.C. § 1404(a), a court may transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice" to any district where the action could have been brought or by the parties' consent.[3]

"The burden is on the moving party to establish that a balancing of proper interests weigh in favor of the transfer." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). The Third Circuit in Jumara v. State Farm Insurance Co. set forth a multi-factor test to apply when considering a motion to transfer venue, under which courts balance various private and public interests and determine on an "individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." 55 F.3d 873, 879–80, 883 (3d Cir. 1995). Private interests include the plaintiff's choice of forum, the defendant's forum preference, whether the claim arose elsewhere, the convenience of the parties based on their physical proximity and financial means, the convenience of the witnesses to the extent that they may be unavailable for trial in one of the fora, and the location of books and records to the extent that they cannot be produced in the fora. Id. Public interests include the enforceability of the

---

[3] Before granting a motion to transfer, a court must determine whether the action could have been brought in the proposed transferee forum. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1970). Venue is proper in "a judicial district in which any defendant resides" if all defendants reside in the same state, or in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b). The parties do not appear to dispute that the action could have been brought in the Northern District of New York, and they did not raise the issue in the proceedings before the Northern District of New York in the related matter. Our independent consideration of the record before us also leads us to conclude that Westcode's action could have been brought in the Northern District of New York, as the MOU was negotiated and executed in that district.

15

judgment, various practical considerations related to the ease, promptness, or expense of litigating the matter, court congestion in the fora, the local interest in resolving the central issue in the case, the public policies of the fora, and, in diversity cases, the trial judge's familiarity with the applicable state law. Id.

Regardless of the Jumara factors, courts in this district have held that where there is a strong likelihood of consolidation with a related action in the transferee forum, a transfer of venue is warranted. D&L Distrib., LLC v. Agxplore Int'l, 959 F. Supp. 2d 757, 765 (E.D. Pa. Mar. 26, 2013); Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc., No. 09-2552, 2009 WL 1845236, at *5 (E.D. Pa. June 26, 2009). "In fact, the presence of a related action in the transferee forum is such a powerful reason to grant a transfer that courts do so even where other Jumara factors, such as the convenience of parties and witnesses, would suggest the opposite." Villari, 2009 WL 1845236, at *5 (citing Weber v. Basic Comfort Inc., 155 F. Supp. 2d 283, 286 (E.D. Pa. 2001); Travelers Indem. Co. v. E.F. Corp., No. 95-5660, 1997 WL 135819, at *8 (E.D. Pa. Mar. 17, 1997)); Zelenkofske Axelrod Consulting, L.L.C. v. Stevenson, No. 99-3508, 1999 WL 592399, at *4 (E.D. Pa. Aug. 5, 1999).

Defendant asks this Court to dismiss or transfer Plaintiff's complaint to the Northern District of New York. Mitsubishi argues that its choice of forum in the New York matter should not be disturbed because, as the first-filing plaintiff, its choice of forum should be given substantial weight. (Mot. Dismiss 12–13.) The underlying claim arose in the Northern District of New York because the MOU was executed there and the projects at the heart of the parties' agreements were all performed in New York. (Mot. Dismiss 13 (citing Strategic Learning, Inc. v. Wentz, No. 04-4341, 2005 WL 241182, at *3 (E.D. Pa. Feb. 1, 2005); Nowicki v. United Timber Co., No. 99-257, 1999 WL 619648, at *1 n.1 (E.D. Pa. Aug. 12, 1999)).) The Northern

District of New York would be a convenient forum in which to litigate the claim because Westcode has a manufacturing plant in Binghamton, New York, and, since Mitsubishi is based in Japan, both fora are equally convenient for Mitsubishi. (Mot. Dismiss 13.) Finally, Mitsubishi argues that, because Westcode's plant is located in New York and the MOU was executed in New York, relevant witnesses and evidence are located in that district. (Mot. Dismiss 13.) As for the relevant public factors, the dockets of the two fora are equally congested and, since New York law governs the matter, the New York court has a greater interest in the matter and familiarity with the applicable law than this Court does. (Mot. Dismiss 14.)

Westcode responds that the public and private factors in fact weigh against transfer to the Northern District of New York. Westcode argues that, as Plaintiff, its choice of forum should be favored. (Pl.'s Resp. 14.) According to Plaintiff, the claim arose in Pennsylvania because the failure to make payments under the MOU occurred where the business decisions causing the breach occurred; where the contract was negotiated and executed is irrelevant. (Pl.'s Resp. 14–16.) Plaintiff maintains that <u>Nowicki</u> and <u>Strategic Learning, Inc.</u> do not support Defendant's contentions regarding where the claim arose. (Pl.'s Resp. 16.) Plaintiff next claims that litigating in the Northern District of New York would be a financial hardship because it has "gross sales of only $10 million." (Pl.'s Resp. 16–17 (emphasis omitted).) Plaintiff also argues that key witnesses and records are all located in Pennsylvania or in other locations outside of the Northern District of New York. (Pl.'s Resp. 17–18.)

As for easy, expeditious, and inexpensive resolution of the matter, Plaintiff argues that the "convenience of Westcode and witnesses and the access to proof will be significantly impacted if the matter is transferred to the Northern District of New York." (Pl.'s Resp. 18–19.) With respect to the court-congestion factor, Plaintiff states that, in 2014, "the median time from

filing to disposition" in the Northern District of New York was 38.8 months, compared to 35.9 months in the Eastern District of Pennsylvania, and argues that this factor does not favor transfer to New York. (Pl.'s Resp. 19.) Plaintiff argues that Pennsylvania has a local interest in deciding this controversy because Westcode is a Pennsylvania corporation and "[t]he determination of the claims at issue in this litigation could determine whether Westcode remains in business." (Pl.'s Resp. 20.) Plaintiff also states that, "[a]s a matter of public policy, Pennsylvania has a greater interest in this lawsuit than does New York" because Westcode is headquartered in Pennsylvania. (Pl.'s Resp. 21.) Lastly, Plaintiff avers that this Court would not have difficulty applying the laws of New York in deciding the action; thus this factor does not favor transfer. (Pl.'s Resp. 21.)

We are unpersuaded by Plaintiff's arguments against transfer and hold that transfer of the entire action is appropriate under the public and private interests that underlie 28 U.S.C. § 1404(a). First, Mitsubishi is the first-filing plaintiff, and though a foreign plaintiff's choice of forum is accorded less deference than that of a domestic plaintiff, "this reduced deference is 'not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference.'" Alliance Indus. Ltd. v. A-1 Specialized Servs. & Supplies, Inc., No. 13-2510, 2014 WL 958957, at *8 (E.D. Pa. Mar. 12, 2014) (quoting Lacey v. Cessna Aircraft Co., 862 F.2d 38, 45–46 (3d Cir. 1988)). Mitsubishi's choice of forum is thus entitled to some deference. However, we also consider Westcode's interest in proceeding in this Court, which we give at least as much weight as Mitsubishi's choice of forum. As a result of their contradictory preferences, the parties' choices do not strongly weigh in favor of either forum and does not affect our analysis.

We agree with Defendant that the claim arose in the Northern District of New York and reject Plaintiff's reading of the case law. In Nowicki, the court held that the Eastern District of

Pennsylvania was the proper forum because the underlying agreement was negotiated and executed in that district. Nowicki v. United Timber Co., No. 99-257, 1999 WL 619648, at *1 n.1 (E.D. Pa. Aug. 12, 1999). Similarly, in Strategic Learning, Inc., the court held that venue in the Eastern District of Pennsylvania for a breach of contract claim was appropriate because negotiations for the contract took place in Malvern, Pennsylvania and part of the contract was performed in the Eastern District. Strategic Learning, Inc. v. Wentz, No. 04-4341, 2005 WL 241182, at *3 (E.D. Pa. Feb. 1, 2005). Here, even if the breach of contract occurred in Pennsylvania, the MOU was negotiated and executed in Binghamton and thus the claim arose in the Northern District of New York, which favors transfer of Count IV to a court in that forum. Additionally, Plaintiff's claims in Counts I–III relate to contracts governing projects performed in New York, so Plaintiff's claims in the action before this Court also arose in New York. Transfer of Plaintiff's remaining counts is therefore also warranted.

    We are unconvinced by Westcode's arguments that the Northern District of New York is an inconvenient forum. The Northern District of New York is not a prohibitively distant forum from Pennsylvania. Westcode owns and operates a manufacturing plant in the Northern District of New York and thus conducts business within that district. Westcode has also already appeared before the New York court. Additionally, the record gives no indication that Westcode could not produce witnesses or access records if venue were transferred. Neither party would face extraordinary expense or inconvenience in appearing in the New York forum. That Mitsubishi might have greater financial means than does Westcode does not support a finding that Westcode would face great financial hardship if this case were transferred. The remaining private interest factors thus are neutral or weigh slightly in favor of transfer of this action to New York.

The public factors considered together weigh in favor of transfer. New York law governs the MOU, so the New York district court has a greater interest in the matter and familiarity with the applicable law than this Court does. The dockets of the two fora are equally congested—a median difference of three months is negligible—so this factor does not alter our analysis. Though Westcode is headquartered in Pennsylvania, it conducts business in the Northern District of New York as well; thus, the New York forum also has an interest in the action.

Moreover, notwithstanding the <u>Jumara</u> factors, the presence of a related action in the New York court weighs in favor of transfer of the Pennsylvania action to the New York forum. Under the first-filed rule, the federal district court that had first possession of the subject matter of an action should resolve the matter. Here, that court is the United States District Court for the Northern District of New York. Resolution of the pending matter before the Northern District of New York would require deciding Westcode's claim, if Westcode were to raise its defense in the New York forum. In the interests of judicial economy, convenience, and fairness, transfer of this matter to the Northern District of New York is proper.

III.    Conclusion

For the reasons discussed above, we GRANT Defendant's motion to transfer Plaintiff's action. The Clerk of Court is directed to transfer this matter to the United States District Court for the Northern District of New York.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.